AEROGROUP INTERNATIONAL,
INC., Plaintiff,

v.

MARLBORO FOOTWORKS, LTD., Laurence D. Koplan, Steven Goldberg, Gredico Footwear Ltd., Town Shoes Ltd., Bata Industries Ltd, Goldport Enterprises, Inc., Marlboro Footworks Ltd. (Taiwan), Masateru Uehara, Frederick Atkins, Inc., Weiss & Neuman Shoe Co., Melville Corporation, Shoe Carnival, Inc., and National Independent Retailers, Inc., Defendants.

No. 96 CIV. 2717 (DLC).

United States District Court,
S.D. New York.

Dec. 24, 1996.

Vito R. Vincenti, Bart. J. Eagle, and Paul
J. Vincenti, Law Offices of Vito R. Vincenti,

P.C., New York City, for Plaintiff Aerogroup, Int'l, Inc.

Barbara Kolsun[1], Gursky & Associates, P.C., New York City, for Defendant Town Shoes Ltd.

Theodore Margolis and James Flynn, Hannoch Weisman, Roseland, NJ, for Defendant Gredico Footwear Ltd.

## OPINION

COTE, District Judge:

On April 17, 1996, plaintiff Aerogroup International, Inc. ("Aerogroup"), filed this action alleging violations of several provisions of the Lanham Act, 15 U.S.C. §§ 1114(1), 1120, 1125(a), and 1125(c); the Patent Act, 35 U.S.C. § 271; and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). Plaintiff also brings various state-law claims.[2] All claims center around alleged violations of plaintiff's intellectual property rights in certain shoes. Defendants Town Shoes Limited ("Town Shoes") and Gredico Footwear, Ltd. ("Gredico"), Canadian corporations who sell shoes exclusively in Canada, now move to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P.[3] For the reasons given below, the motions are granted.

## I. BACKGROUND

*Aerogroup*

Aerogroup is a New Jersey corporation with its principal place of business in New Jersey, and it is authorized to do business in New York. Aerogroup is in the business of purchasing and distributing shoes to customers throughout the United States (including New York) and internationally. One of the brands of shoes distributed by Aerogroup is "Aerosoles," which plaintiff describes as a lightweight, flexible women's shoe. Aerosoles are manufactured in various factories throughout Europe and Sri Lanka. Aerogroup claims intellectual property rights in connection with the Aerosoles shoe.

For the past three years, sales of Aerosoles at retail have averaged in excess of $140,000,000.00 a year, and plaintiff has incurred expenses averaging in excess of $1,500,000.00 a year in advertising Aerosoles shoes. Plaintiff, through its exclusive Canadian distributor, is also a large seller and distributor of Aerosoles shoes in Canada.

Plaintiff also causes the manufacture of "unbranded" or "private label" shoes, which plaintiff refers to as "first cost footwear," at a factory located in the People's Republic of China (the "Chinese factory"). According to plaintiff, the first cost footwear is

> similar to, but of a lesser quality of design, manufacture and materials than, the Aerosoles Footwear, is of a lower cost and sales price, and is produced and distributed by plaintiff to serve a different, lower priced market than the Aerosoles Footwear.

The Chinese factory is owned or controlled by Oriental Wide Limited ("Oriental Wide"), a Hong Kong corporation. Since 1987, plaintiff has utilized the Chinese factory to manu-

---

1. Subsequent to the submission of this motion, Ms. Kolsun left Gursky & Associates. The Court has been informed that William M. Dallas, Jr.; Sullivan & Cromwell; Attorneys for Defendant Bata Industries Ltd.; 125 Broad Street; New York, N.Y. 10004, will shortly be substituted as counsel for Town Shoes.

2. Plaintiff filed an amended Complaint on July 24, 1996. All references to the Complaint in this Opinion only will apply to the amended Complaint. Plaintiff has since withdrawn its RICO claim.

On October 21, 1996, after a trial on Aerogroup's motion for an injunction against defendants Marlboro, Goldberg, and Koplan, this Court granted in part and denied in part Aerogroup's motion. A permanent injunction reflecting this ruling was signed on November 15, 1996. The Court found that some of the shoes sold by Town Shoes infringed Aerogroup's intellectual property rights. None of the shoes sold by Gredico, however, were found to infringe Aerogroup's rights.

3. Both of these defendants contest the existence of subject matter jurisdiction on the claims against them, but have chosen to proceed first with a motion addressed to the lack of personal jurisdiction and have not yet briefed the issue of subject matter jurisdiction. Because of considerations of judicial economy, and because the issue of subject matter jurisdiction is not easily resolved, I will reach the issue of personal jurisdiction in order to "dispos[e] of [the case against these defendants] on a simpler ground." *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2d Cir.1996). ·

facture and supply its first cost footwear "in accordance with the manufacturing, materials, supply and design specifications of plaintiff." As a consequence of plaintiff's use of the Chinese factory, plaintiff claims the factory "has developed a special expertise in producing First Cost Footwear."

*Marlboro*

Defendant Marlboro Footworks Ltd. ("Marlboro") is a Massachusetts corporation with its principal place of business in Massachusetts. Acting as a buying agent, Marlboro is in the business of importing, selling, and distributing shoes from the Far East to the United States and Canada. The other corporate defendants are businesses for whom Marlboro has ordered shoes. According to plaintiff, since 1993 Marlboro and other defendants and nonparties conspired and have acted to infringe the plaintiff's intellectual property rights in Aerosoles shoes by manufacturing inferior copies of them at the same Chinese factory which manufactures plaintiff's private label shoes, and selling them to consumers in the United States and Canada.

*Town Shoes*

Town Shoes, a shoe retailer, owns 16 stores which use the name Town Shoes, and 20 stores which use the name The Shoe Company. All the stores are in Canada. Town Shoes does not have an office in the United States, does not sell shoes in the United States, does not advertise in U.S. publications, does not have employees in the United States, and does not ship goods into the United States. Town Shoes representatives have attended shoe shows in the United States, including shows in Las Vegas, Chicago, and four times a year in New York. Town Shoes purchases shoes from American distributors.

In September or October of 1995, Town Shoes ordered 2,749 pairs of "Active Air" women's shoes from N.I.R., an American wholesaler which is an Illinois corporation. Because of the size of the order, N.I.R. transferred it to Marlboro. The shoes were shipped directly from Asia to Canada, and Town Shoes paid the factories directly. When actually delivered, the shoes were named "Airsupply" rather than "Active Air." In March 1996, Town Shoes called Marlboro and N.I.R. to request additional shoes, but the only shoes available were 600 pairs of Airsupply shoes from N.I.R.'s inventory. Those shoes were delivered by truck to Town Shoes from the United States.[4] Plaintiff contends that the two orders of Airsupply shoes infringe plaintiff's intellectual property rights in its Aerosoles shoes.

According to Town Shoes, the Airsupply shoes at issue in this case were advertised for sale only once—in a flyer which was placed in *The Toronto Star* and other local newspapers in Canada. Town Shoes chose the postal codes to which the insert would be delivered, and all of them were in Canada. Moreover, the inserts were only placed in newspapers for home delivery, not those sent to newsstands. Therefore, all of the advertising relating to the shoes at issue in this case took place exclusively in Canada.

Aerogroup alleges that the Airsupply shoes were first shown to Town Shoes at the Las Vegas shoe show in August 1995 and that Town Shoes' president met with Marlboro representatives again in December 1995 at the New York shoe show. Aerogroup contends that Town Shoes chose the "Airsupply" name for the shoes. This allegation is based on the fact that Steven Goldberg, whose company works as a consultant for Marlboro, testified in his deposition that usually the customers choose the box and sock liner labels. Town Shoes denies that it chose the design of the Airsupply boxes or sock liner labels. For the purposes of this motion, the Court will assume that Town Shoes participated in the selection of an infringing trade dress.

Aerogroup alleges that the radio stations on which Town Shoes advertises can be heard in Buffalo, New York, and that some of the Canadian newspapers in which Town Shoes advertises have a circulation in the United States. Aerogroup submitted an affi-

---

4. In connection with another motion before this Court, Marlboro has submitted sales figures with respect to Town Shoes stating that Town Shoes purchased 2,166 pairs of shoes from Marlboro. This difference in figures does not change this Court's analysis.

davit from an employee of its Canadian distributor who contacted the Canadian radio stations on which Town Shoes advertises and was told that they can be heard in Buffalo, New York.[5] The employee also contacted several of the Canadian publications in which Town Shoes advertises and was told by some of them that they have American subscribers, including some in New York.[6] Aerogroup notes that Town Shoes is a member of the American (or National) Shoe Retailers Association and at one time was a member of the Footwear Fashion Association of New York.

*Gredico*

Gredico is a Canadian corporation with its principal place of business in Ontario, Canada. Gredico is in the business of importing, buying at wholesale, and selling and distributing shoes at wholesale and retail throughout Canada. In its Complaint, Aerogroup alleges that Gredico is Marlboro's representative, agent, or distributor in Canada. Marlboro sells to or procures for Gredico lightweight, flexible women's shoes bearing the label "Easy Step." The plaintiff contends that these shoes infringe its rights in Aerosoles. On or about December 22, 1995, Gredico requested that the Easy Step logo contain "a single swoosh." The Aerosoles' logo contains a "swoosh" that resembles a flat and wide inverted "S" which curves back and forth three times. On or about March 25, 1996, an employee of plaintiff's New York law firm telephoned Gredico and inquired where and how to obtain Easy Step shoes in the United States. The Gredico representative advised the caller to telephone Marlboro.

Plaintiff also alleges that in its advertising, Gredico pastes Easy Step labels into Aerosoles shoes and displays the shoes with the slogan: "The comfortable shoe you know at a comfortable price." Plaintiff alleges that this refers to plaintiff's Aerosoles and evidences Gredico's desire to trade on the reputation of the Aerosoles shoe. The only example of this type of advertising cited by Aerogroup is an advertisement which appeared in the December 1995 issue of a Canadian trade magazine, the *Canadian Footwear Journal* (the "*Journal*"). It is undisputed that the *Journal* has subscribers in the United States and New York.

Finally, Aerogroup submits an affidavit from a former employee of Gredico who worked there for eight years until early 1995, which asserts that Gredico "solicits sales in New York," attends shoe shows hosted by the Fashion Footwear Association of New York ("FFANY"), and "exhibits its footwear line to retail buyers and other customers, sometimes on its own, and sometimes in conjunction with its suppliers, either at the shoe show location itself or at a nearby hotel suite." In December 1995, for example, Gredico attended the FFANY shoe show in New York City and exhibited its shoes to buyers and other customers in a New York City hotel suite. Gredico also attended the August 1995 and February 1996 shoe shows in Las Vegas, to exhibit its shoes either at the shows or a hotel suite.

In an affidavit, Gredico's president states that Gredico is not Marlboro's agent, does not have offices in the United States, does not sell to U.S. companies or advertise in U.S. publications, and does not ship goods into the United States. In January 1996, Gredico contacted Marlboro in Massachusetts and ordered 5,133 pairs of shoes which were to be manufactured in the Far East and shipped directly to Canada. At the time this motion was submitted, Gredico reported that it had only received 1,449 of the shoes, and had sold none of them.[7] This single order is

---

**5.** All of the testimony regarding the circulation of magazines and newspapers and the transmission of radio signals in the United States is hearsay but it is not disputed by Town Shoes.

**6.** *Toronto Life Fashion* has 552 U.S. subscribers, including 154 in New York; *Flare* has a U.S. circulation of 200 copies, and 159 are distributed in New York; *Chatelaine* has a U.S. circulation of 1,100 copies, with 583 in New York; *The*

*Toronto Star* and *The Toronto Sun* newspapers also circulate in the United States.

**7.** In connection with another motion before this Court, Marlboro has submitted more recent sales figures with respect to Gredico stating that Gredico purchased 17,889 pairs of Easy Step shoes from Marlboro as of November 14, 1996. As noted above, however, at trial the Court found that these shoes did not infringe Aerogroup's intellectual property rights. In any event, substi-

the "extent of what transpired between Gredico and Marlboro concerning the ordering of shoes manufactured in countries other than the United States to be sold in countries other than the United States." Gredico's president also reports that "the employees of the company cannot think of any contacts with New York in the conduct of our business which are other than rare and casual." He contends that Gredico attends shoe shows in both Canada and outside Canada in order to solicit Canadian customers, but not non-Canadian customers. In fact, Gredico has never knowingly solicited sales from New York customers or other customers in the United States. Finally, Gredico's president claims that while Gredico does advertise in the *Journal*, it does so to reach Canadian customers, and it has never received an order from the United States as a result of any ad placed in the *Journal*.

## II. *STANDARD*

In a diversity case or a case arising under a federal law which does not provide for service of process on a party outside the state, the issue of personal jurisdiction must be determined according to the law of the forum state. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 105–10, 108 S.Ct. 404, 410–13, 98 L.Ed.2d 415 (1987); *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 961 (S.D.N.Y.1995). It is well established that on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996). The plaintiff's burden depends on the procedural posture of the litigation. Where there has been no discovery, "a plaintiff may defeat a motion to dis-

miss based on legally sufficient allegations of jurisdiction." *Id.* But where there has been discovery regarding personal jurisdiction, the plaintiff's burden is to make a *prima facie* showing which includes an averment of facts that, if given credit by the ultimate trier of fact, would be sufficient to establish jurisdiction over the defendant. *Id.* at 567.

Aerogroup and Town Shoes have conducted discovery on the issue of personal jurisdiction. Accordingly, with respect to Town Shoes' motion, Aerogroup bears the burden of averring sufficient facts to confer jurisdiction over Town Shoes. Aerogroup has had ample opportunity to engage in jurisdiction-related discovery with Gredico, but has not availed itself of this opportunity. Moreover, Aerogroup had full discovery of Marlboro and the action between Aerogroup and Marlboro—which is the principle action in this matter—has already been fully tried on the merits. I therefore find that Aerogroup is required to make a *prima facie* showing for jurisdiction over Gredico as well as Town Shoes.[8]

Aerogroup asserts jurisdiction over Town Shoes and Gredico under two theories. First, under New York's long-arm statute, Civil Practice Law & Rules ("CPLR") § 302(a)(2), Aerogroup argues that both Town Shoes and Gredico have committed a tort in New York. Second, Aerogroup argues that Town Shoes and Gredico are subject to national service of process personal jurisdiction under Rule 4(k)(2), Fed.R.Civ.P.[9]

## III. *DISCUSSION*

A. *New York's Long–Arm Statute*

 CPLR § 302(a)(2) provides, in relevant part, that

a court may exercise personal jurisdiction over any non-domiciliary . . . who in per-

---

tuting this figure for those listed above would not change this Court's analysis.

**8.** While I find that it is appropriate to require Aerogroup to make a *prima facie* showing, the result reached here would be no different if Aerogroup were only required to allege legally sufficient grounds for jurisdiction over Gredico.

**9.** At the time this motion was briefed, plaintiff argued that RICO's provision for nationwide service of process, 18 U.S.C. § 1965, permits this Court to assert personal jurisdiction over Town Shoes and Gredico. As reflected in the Order of November 15, 1996, however, plaintiff has voluntarily withdrawn its RICO cause of action. Accordingly, this is no longer an appropriate basis of jurisdiction.

son or through an agent ... *commits a tortious act within the state....*

(Emphasis supplied). Plaintiff correctly argues that for CPLR § 302(a)(2) purposes, a Lanham Act violation sufficient to confer personal jurisdiction need only amount to an attempt to "pass off" a good as that of the plaintiff's—no actual sale is required. *See Hubbell,* 883 F.Supp. at 961 (citing cases). The reason for this rule is that in cases of trademark infringement, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, that is, where the goods are offered for sale or sold. *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *Pilates Inc. v. Pilates Inst., Inc.,* 891 F.Supp. 175, 180 (S.D.N.Y.1995) (finding jurisdiction under § 302(a)(2) where defendant mailed materials soliciting orders into New York); *Taurus Int'l, Inc. v. Titan Wheel Int'l, Inc.,* 892 F.Supp. 79, 81–82 (S.D.N.Y.1995).

### Town Shoes

■ The only possible tortious acts in New York involving Town Shoes are (1) the fact that some of the radio stations, newspapers, and magazines in which Town Shoes advertises reach into New York; and (2) Town Shoes' attendance at shoe shows in New York.

It is undisputed that Town Shoes is a Canadian retailer with no stores in the United States. Aerogroup nowhere alleges that Town Shoes has sold or attempted to sell to consumers in New York any allegedly infringing Airsupply shoes. While it may be true that some of the Canadian newspapers, magazines, and radio stations which Town Shoes customarily uses to advertise are distributed or can be heard in New York, Aerogroup has not alleged that the flyer used to advertise the shoes at issue in this litigation ever made it to the United States. As described above, the allegedly infringing Airsupply shoes were advertised only once through fliers which were placed in *The Toronto Star* and other local Canadian newspapers. Town Shoes chose the postal codes to which the inserts would be delivered, each of these postal codes was in Canada near one of Town Shoes' stores, and there is no allegation that any of the inserts were delivered in the United States. Finally, there is no allegation that Town Shoes solicits sales at any of the New York shoe shows it attends. It is undisputed that Town Shoes attends the shoe shows as a buyer rather than a seller. Accordingly, I find that I do not have personal jurisdiction over Town Shoes under CPLR § 302(a)(2).

### Gredico

■ As with Town Shoes, Gredico engaged in only two possible tortious acts involving New York. They are (1) the circulation in New York of the Easy Step advertisement in the December 1995 edition of the *Journal,* a Canadian publication; and (2) Gredico's attendance at shoe shows in New York. The Court, however, rejects these proposed bases to assert personal jurisdiction over Gredico.

Plaintiff nowhere alleges that Gredico has either sold or attempted to sell the allegedly infringing Easy Step shoes in New York. Aerogroup does no more than speculate in its brief that Gredico "presumably" sold Easy Step shoes at the FFANY shoe show in New York in December of 1995. Given the limited nature of Gredico's participation in the infringing conduct alleged in this suit, it cannot be said that this speculation is sufficiently connected to any evidence to be considered.

Even assuming, however, that Gredico had offered the Easy Step shoes for sale to Canadian retailers attending the New York shoe show, this would not constitute a "passing off" in New York. The plaintiff contends that Marlboro and Gredico solicited sales from retailers and wholesalers by representing that Marlboro's shoes are remarkably successful "knock-offs" of Aerosoles. The passing off occurred, under the plaintiff's theory of the case, not when the shoes were sold to retailers, but instead when the "knock-offs" were offered for sale to consumers. Aerogroup does not dispute that Gredico only offered its shoes for sale to Canadian customers, and therefore, that it was Canadian consumers and not New York consumers

to whom the goods would be eventually "passed off" and who were the intended victims of the unfair competition.

In addition, I find that plaintiff cannot satisfy its burden by means of the advertisement in the *Journal.* The advertisement is a promotion of the product and not the kind of solicitation directed at prospective New York consumers that in other cases has been held sufficient to confer personal jurisdiction. *See Taurus Int'l,* 892 F.Supp. at 82 (discussing cases involving mailings into New York of mail order catalogues or brochures soliciting business); *Pilates,* 891 F.Supp. at 180 (defendant mailed order sheets soliciting sales in New York); *German Educ. Television Network, Ltd. v. Oregon Pub. Broad. Co.,* 569 F.Supp. 1529, 1532 (S.D.N.Y.1983) (personal jurisdiction over defendant who "placed into motion accepted industry procedures which had the practical effect of offering allegedly infringing products for sale in New York"). Moreover, Gredico placed the ad in a Canadian trade journal that incidently had New York subscribers. There is thus no reason to believe that the *Journal* advertisement was intentionally directed at New Yorkers. Accordingly, I find that I do not have personal jurisdiction over Gredico under Section 302(a)(2) of the New York long-arm statute.

### B. *Fed.R.Civ.P. 4(k)(2)*

Plaintiff next contends that Rule 4(k)(2), Fed.R.Civ.P., provides this Court with personal jurisdiction over Town Shoes and Gredico. Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any State.

In essence, Rule 4(k)(2) requires (1) that plaintiff's cause of action arise under federal law; (2) that the defendant is not subject to the jurisdiction of the courts of any one State; and (3) that the defendant's total contacts with the United States as a whole are sufficient to confer the Court with personal jurisdiction over the defendant without offending due process.

#### 1. *Whether Defendants Are Subject to the Personal Jurisdiction of "Any State"*

Having found that Town Shoes and Gredico are not subject to long-arm jurisdiction in New York, Massachusetts is the only other state with which Town Shoes or Gredico might have sufficient contacts to justify exercising personal jurisdiction over them. In order for either defendant to be subject to personal jurisdiction in Massachusetts, I must find that they have sufficient contacts with Massachusetts (1) to be subject to the Massachusetts long-arm statute; and (2) to satisfy the due process requirements of the Constitution. *Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 712 (1st Cir.1996).

#### a. *The Massachusetts Long–Arm Statute*

The Massachusetts long-arm statute confers personal jurisdiction, "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's ... transacting any business in" Massachusetts. Mass.Gen.Laws Ann. ch. 223A, § 3(a) (1985).[10] There are two elements to this provision: (1) the defendant must "transact business" in Massachusetts; and (2) the cause of action must "arise from"

---

**10.** I do not address whether Town Shoes or Gredico would be subject to personal jurisdiction under the Massachusetts version of New York CPLR § 302(a)(2), the "tort" section, for the same reasons that I declined to exercise jurisdiction based on the New York statute. The Massachusetts statute, Section 3(c), allows jurisdiction where an entity has "caus[ed] tortious injury by an act or omission in [Massachusetts]." In analyzing an analogous provision of the Massachusetts long-arm statute in the context of a Lanham Act violation, the First Circuit stated that "[t]he 'tort' of infringement is thus the use of a registered mark in connection with the sale of goods, without the consent of the owner, that is likely to cause confusion." *The Keds Corp. v. Renee Int'l Trading Corp.,* 888 F.2d 215, 218 (1st Cir.1989). This is similar to the "passing off" analysis in the Second Circuit. Because plaintiff alleges no use of its trademark by Town Shoes or Gredico in Massachusetts—no passing off—I find no personal jurisdiction under Section 3(c) of the Massachusetts long-arm statute.

defendant's business transaction in the State. *Nowak,* 94 F.3d at 712.

### i. *"Transacting Business" Element*

■ The "transacting business" element has been construed broadly; although an isolated and minor transaction with a Massachusetts resident may be insufficient, "generally [a defendant's] purposeful and successful solicitation of business from residents of [Massachusetts] ... will suffice." *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 625 N.E.2d 549, 551–52 (1994) (finding personal jurisdiction over Delaware corporation owning California hotel which solicited business from Massachusetts residents).

■ It is undisputed that Town Shoes and Gredico each ordered the allegedly infringing shoes through Marlboro in Massachusetts. In addition, each paid Marlboro a commission for its services. This is sufficient to constitute "transacting business" within the meaning of the Massachusetts long-arm statute.[11]

11. Aerogroup suggests that all of the actions of Marlboro of which plaintiff complains are attributable to Town Shoes and Gredico for purposes of personal jurisdiction because Marlboro was acting as agent for Town Shoes and Gredico. Massachusetts's long-arm statute by its terms permits a court to look to the in-state activities of an agent in determining whether to find personal jurisdiction over a principal in an action by a third party. *See* Mass.Gen.Laws ch. 223A, § 3 (permitting courts to assert personal jurisdiction over a non-domiciliary "who acts directly or through an agent"). *See also American Home Assurance Co. v. Sport Maska, Inc.,* 808 F.Supp. 67, 72 (D.Mass.1992) (discussing "agency" theory of personal jurisdiction under Massachusetts long-arm statute). New York has a similar provision, as noted by plaintiff. *See* CPLR § 302(a) (permitting courts to assert personal jurisdiction over non-domiciliaries "who in person or through an agent" engage in specified types of conduct). *See also Galgay v. Bulletin Company, Inc.,* 504 F.2d 1062, 1065 (2d Cir.1974); *H. Heller & Co., Inc. v. Novacor Chemicals Ltd.,* 726 F.Supp. 49, 55 (S.D.N.Y.1988) (nonresident must exercise some element of control over agent), *aff'd,* 875 F.2d 856 (2d Cir.1989).

Even if the plaintiff could establish that Marlboro is an agent of Town Shoes and Gredico for purposes of obtaining personal jurisdiction over them, it would only be appropriate to consider those activities of Marlboro that have a nexus to Town Shoes and Gredico. It is simple agency law that the principal is only liable for the actions of its agent when those actions are within

### ii. *"Arising From" Element*

■ The Supreme Judicial Court of Massachusetts has recently made clear that the "arising from" element of Section 3(a) is also to be read broadly and is to be analyzed under a "but for" test. *Tatro,* 625 N.E.2d at 553–54. *Accord Nowak,* 94 F.3d at 713 (recognizing that *"Tatro* is controlling insofar as it deals with the construction of" § 3(a)'s "arising from" element).[12] Consequently, if a claim is made possible by or lies in the wake of the transaction of business in Massachusetts, the claim arises from that business. *Tatro,* 625 N.E.2d at 553.[13]

Here, "but for" Town Shoes and Gredico's acquisition of the allegedly infringing shoes from Marlboro, the shoes would not have been sold in Canada, and Aerogroup would not have suffered its alleged injury. Accordingly, both are subject to the Massachusetts long-arm statute, and the only remaining inquiry is the due process test.

the scope of the agency relationship and for the benefit of the principal. All of Marlboro's actions with respect to all of the shoes sold in this case—such as those shoes sold by other defendants in the United States—are not attributable to Town Shoes and Gredico because these actions were not undertaken within the scope of the agency relationship between Marlboro and Town Shoes and Gredico, and they were not for the benefit of Town Shoes and Gredico.

12. I note that Massachusetts believes that it is reading its long-arm statute more broadly than New York reads its analogous provision. In *Tatro* the Supreme Judicial Court explicitly declined to follow the interpretation of the New York long-arm statute given by the Second Circuit in *Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d 317, 321–22 (2d Cir.1964). *See Tatro,* 625 N.E.2d at 553.

13. In arguing that under the Massachusetts long-arm statute this cause of action does not arise from the transacting of business in Massachusetts, Aerogroup cites *Crocker v. Hilton Int'l Barbados, Ltd.,* 976 F.2d 797 (1st Cir.1992) and *Marino v. Hyatt Corp.,* 793 F.2d 427 (1st Cir. 1986). Aerogroup fails to recognize, however, that the Massachusetts Supreme Judicial Court struck a "fatal blow" to *Crocker* and *Marino* in its 1994 decision in *Tatro. See Nowak,* 94 F.3d at 713. Thus, these cases are no longer good law with respect to the proper interpretation of the "arising from" requirement of the Massachusetts long-arm statute.

*b. Whether Massachusetts's Exercise of Jurisdiction Would Satisfy Due Process*

The First Circuit has a three-pronged analysis for determining whether an exercise of specific personal jurisdiction comports with the requirements of due process.[14] First, the cause of action at issue must " 'arise out of, or relate to, the defendant's forum-state activities.' " *Nowak*, 94 F.3d at 712 (quoting *Pritzker v. Yari*, 42 F.3d 53, 60–61 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995)). Second, the defendant must have purposefully availed itself " 'of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws,' " making it foreseeable that the defendant could be haled into court in that state. *Nowak*, 94 F.3d at 712 (quoting *Pritzker*, 42 F.3d at 60–61). Finally, it must be reasonable for the court to exercise jurisdiction over the defendant. *Nowak*, 94 F.3d at 712.

### i. *Relatedness*

■ Turning to the requirement of relatedness, the First Circuit would not appear to require that the "passing off," which creates the injury from the tortious conduct alleged by plaintiff here, occur within Massachusetts. In *Nowak* the First Circuit concluded that, in a tort action arising out of a business or contractual relationship, strict adherence to a requirement that the injury must be proximately caused by the conduct connected to the forum was "unnecessarily restrictive." *Id.* at 715. While proximate cause is an essential element of a tort action and defines the scope of a defendant's liability, when deciding whether a party is subject to the Court's jurisdiction there is no need to be as rigid. *Id.* In *Nowak*, the Court found personal jurisdiction over a Hong Kong hotel that had solicited business from Massachusetts residents. A Massachusetts resident had drowned in the hotel's pool. The Court noted that

> When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result.... If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

*Id.* at 715–16. By relaxing the requirement of proximate cause, the First Circuit introduced flexibility into an analysis of this prong of the jurisdictional inquiry. The danger from such a relaxation, however, is that a defendant will not have fair warning of when its conduct will subject it to a state's jurisdiction. *Id.* at 715. Thus, application of the relaxed proximate cause standard articulated by the First Circuit requires a careful analysis of the facts of the case, and will, if the relatedness requirement is just barely met, justify closer scrutiny when judging whether the exercise of jurisdiction is reasonable. *Id.* at 715–16.

Here, Town Shoes and Gredico placed their orders of shoes through Marlboro in Massachusetts. The shoes were manufactured abroad, were not shipped through Massachusetts, and were offered for sale in Canada. In contrast to *Nowak*, there is no allegation that either company solicited Massachusetts residents or injured them through the alleged tortious conduct. Nor is the plaintiff a Massachusetts resident. On these facts, I conclude that the First Circuit would not find the conduct which occurred in Massachusetts sufficiently related to the claims in this lawsuit to support jurisdiction.

---

**14.** Under the analysis I must pursue in interpreting Rule 4(k)(2), I am in effect deciding whether the plaintiff would have been able to obtain personal jurisdiction over the defendants had it chosen to file its lawsuit in the District of Massachusetts rather than the Southern District of New York. Thus, although the constitutional requirements for due process are presumed to be uniformly applied throughout the federal court system, in order to replicate as closely as possible plaintiff's likelihood of actually succeeding with a suit filed in the District of Massachusetts, I shall be guided in my understanding of the requirements of due process at this stage of the analysis by First Circuit authority.

#### ii. *Purposeful Availment*

■ In analyzing whether a defendant has purposefully availed itself of the forum, the focus of the Court's analysis is on the issues of voluntariness and foreseeability. The First Circuit has held that this element of due process "ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state, but rather guarantees that the exercise of jurisdiction is 'fair, just, or reasonable.'" *Nowak,* 94 F.3d at 716 (citations omitted). As the First Circuit stated in *Nowak,* "[i]n order to be subject to Massachusetts jurisdiction, a defendant need only have one contact with the forum state, so long as that contact is meaningful." *Id.* at 717.

Both Town Shoes and Gredico voluntarily and deliberately entered into a business relationship with a Massachusetts entity. It was foreseeable that such a business relationship could generate litigation and might subject these defendants to a lawsuit in Massachusetts, for instance, for a failure to pay commissions owed to Marlboro. It was not reasonably foreseeable to either defendant, however, that they would be sued in Massachusetts for trademark violations for shoes ordered through Marlboro, but which were sold in Canada. Accordingly, I do not find in the context of this lawsuit that either defendant purposefully availed itself of Massachusetts as a forum.

#### iii. *Reasonableness*

■ Even if Town Shoes and Gredico have sufficient contacts with Massachusetts to warrant a finding of minimum contacts, I find that exercising jurisdiction over them fails the reasonableness prong of the due process inquiry. As the Court stated in *Nowak,* "[p]ersonal jurisdiction may only be exercised if it comports with traditional notions of 'fair play and substantial justice.'" *Nowak,* 94 F.3d at 717 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). The First Circuit has outlined five factors taken from the Supreme Court's decision in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), which this Court must consider in making this reasonableness determination:

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Nowak,* 94 F.3d at 717 (quoting *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992)). Again, if the showing of minimum contacts is weak, the Court should weigh the reasonableness factors more heavily in the balance. *Nowak,* 94 F.3d at 717.

The First Circuit notes that it will be burdensome any time a party is required to litigate in a foreign forum. *Id.* at 718. Thus, there must be a special or unusual showing of inconvenience. *Id.* There is no question that forcing Town Shoes or Gredico to litigate in Massachusetts as opposed to Canada would be burdensome. This burden is magnified by the cost of defending this complex litigation when neither defendant ordered a significant number of the allegedly infringing shoes. Thus, I find that this factor weighs against exercising jurisdiction.

In *Nowak* the First Circuit stated that "[a]lthough a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, that interest is diminished where the injury occurred outside the forum state." *Nowak,* 94 F.3d at 718. The Lanham Act is designed to protect consumers from confusion resulting from the misappropriation of trademarks or trade dress. 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2.12[1], at 2–59 (3d Ed.1996). But here, neither Town Shoes nor Gredico sold any allegedly infringing shoes in Massachusetts, so no Massachusetts consumers were confused. Moreover, to the extent the Lanham Act also has as a purpose the protection of trademark owners, *see id.* § 2.06, it is significant that Aerogroup is not a Massachusetts company. I find that this factor weighs in favor of not exercising jurisdiction since the primary actions in which Town Shoes and Gredico engaged took place

in Canada, and since Massachusetts residents are unaffected by these defendants' actions.

Turning to Aerogroup's interest, it may be more convenient for Aerogroup, an American company, to litigate in Massachusetts than in Canada. On the other hand, Aerogroup did not choose Massachusetts as a forum, and litigating in Massachusetts would not be substantially more inconvenient than litigating in Canada, once Aerogroup loses its first choice of forum, New York. In any event, because Canada may be more inconvenient than Massachusetts, this factor weighs somewhat in favor of Aerogroup.

In *Nowak*, the First Circuit observed that the efficient administration of justice, when analyzed in this context, is usually "a wash." *Nowak*, 94 F.3d at 718. This case is no different. Considering the number of both Massachusetts and Canadian witnesses and documents, this factor is likely to be even between the parties. If Aerogroup had brought this entire action originally in Massachusetts, however, it could have argued quite forcefully that retaining jurisdiction over the Canadian defendants would allow one court to decide all the issues relating to this case in one lawsuit. Aerogroup has forfeited that argument by bringing suit in New York, a state which clearly does not have jurisdiction over these Canadian defendants.

The final factor "addresses the interests of the affected governments in substantive social policies." *Id.* at 719. In the international context, this factor requires a consideration of the foreign nation's interest in furthering the substantive policies implicated by this litigation, as well as the interest of the United States. *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 115, 107 S.Ct. 1026, 1033–34, 94 L.Ed.2d 92 (1987). Indeed, in analyzing the competing state policies, a court should bear in mind the comity traditionally accorded foreign courts by American courts, and should engage in "a careful inquiry into the reasonableness of the assertion of jurisdiction" and should be unwilling "to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.*

Canada unquestionably has a strong interest in enforcing its own intellectual property laws with respect to sales which take place exclusively in Canada. As for the interests of the United States, the Court has uncontested jurisdiction over the primary alleged infringer—an American corporation—which is the source of the shoes sold by Town Shoes and Gredico. Aerogroup can be accorded full relief from this American defendant without any unnecessary burden on two Canadian corporations with very minimal contacts to the United States. In sum, the strong nexus between Canada's interest in its intellectual property law and the fact that the sales complained of here occurred exclusively in Canada, supports the proposition that Town Shoes and Gredico should not be subject to this Court's jurisdiction.

In sum, I find that it would be unreasonable for Massachusetts to exercise jurisdiction over either Town Shoes or Gredico. Here, where Town Shoes and Gredico are Canadian corporations with no offices, employees, or sales in Massachusetts, it would simply be contrary to substantial justice for a court in Massachusetts to exercise personal jurisdiction where none of its residents have been injured through the tortious activity. Accordingly, there are no States which could exercise personal jurisdiction over Town Shoes or Gredico.

### 2. Whether, Under Rule 4(k)(2), Town Shoes' and Gredico's National Contacts Are Sufficient to Satisfy Due Process

Because I find that no one State may exercise personal jurisdiction over either Town Shoes or Gredico, I must now turn to Rule 4(k)(2) and ascertain whether exercising jurisdiction would be "consistent with the Constitution." The Second Circuit [15] has recently outlined the due process jurisdictional inquiry, dividing it into a two-step process—

---

**15.** In undertaking this due process analysis it is appropriate to rely on Second Circuit case law rather than First Circuit law because I am no longer anticipating whether a Massachusetts court would exercise personal jurisdiction over Town Shoes or Gredico.

the "minimum contacts" inquiry and the "reasonableness" inquiry. *Metropolitan Life Ins.*, 84 F.3d at 567.[16]

### a. Minimum Contacts

■ In applying Rule 4(k)(2), courts have engaged in the traditional minimum contacts analysis based on an aggregation of the defendant's contacts with the nation as a whole. *See Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 87 (S.D.N.Y.1995).[17] *See also World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723–24 (5th Cir.1996); *In the Matter of an Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413, 417–19 (10th Cir.1996); *Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F.Supp. 484, 488 (D.Mass.1996); *United States v. International Brotherhood of Teamsters*, 945 F.Supp. 609, 616–19 (S.D.N.Y.1996); *United Trading Co. v. M.V. Sakura Reefer*, 1996 WL 374154, at *5 (S.D.N.Y. July 2, 1996); *Bank Brussels Lambert v. Credit Lyonnais (Suisse)*, 192 B.R. 73, 79–80 (S.D.N.Y.1996); *Nissho Iwai Corp. v. M/V Star Sapphire*, 1995 WL 847172, at *3–4 (S.D.Tex. Aug. 24, 1995); *Pacific Employers Ins. Co. v. M/T Iver Champion*, 1995 WL 295293, at *5 (E.D.La. May 11, 1995).

The minimum contacts analysis is governed by the Supreme Court case, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. There are two types of jurisdiction which the Court should bear in mind in determining whether there are sufficient minimum contacts.

Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum"; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.

*Metropolitan Life Ins.*, 84 F.3d at 567–68 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & nn. 8–9, 104 S.Ct. 1868, 1872–73 & nn. 8–9, 80 L.Ed.2d 404 (1984)).

To find general jurisdiction, the defendant must have "continuous and systematic general business contacts" with the forum State. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. at 1872–73. This is a fact-specific inquiry that requires courts to assess the defendant's contacts "*as a whole.*" *Metropolitan Life Ins.*, 84 F.3d at 570 (emphasis in original). Moreover, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test" than that applicable to specific jurisdiction. *Id.* at 568. This issue need not detain me long. The plaintiff does not contend that the contacts of either defendant with the United States as a whole are sufficient for this Court to find one of them present in a continuous and systematic way.

---

**16.** The limits on personal jurisdiction based on national contacts are contained in the Due Process Clause of the Fifth Amendment, which governs the federal government. *See* Fed.R.Civ.P. 4(k)(2) advisory committee's note. Much of the Supreme Court's personal jurisdiction constitutional jurisprudence is based, however, on the Due Process Clause of the Fourteenth Amendment, which is applicable to the states. *See, e.g., Burger King Corp.*, 471 U.S. at 462, 105 S.Ct. at 2174; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co.*, 326 U.S. at 310, 66 S.Ct. at 154. There is no reason that the test for the extent of governmental power allowed by the Due Process Clause would be interpreted differently for the Fifth as opposed to the Fourteenth Amendment, and therefore, this Court shall draw on the relevant jurisprudence from both Amendments.

**17.** In *Eskofot*, the Court adopted the three factors taken from the Second Circuit's decision in *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326 (2d Cir.1972), in determining what activities of a foreign corporation can satisfy the minimum contacts standard of due process. Those factors are: "(1) transacting business in the United States, (2) doing an act in the United States, or (3) having an effect in the United States by an act done elsewhere." *Eskofot*, 872 F.Supp. at 87. While these factors, taken by the Second Circuit from the Restatement, are relevant to a determination of minimum contacts, *Leasco* indicates that these three factors are not exclusive but were simply the factors relevant to its facts. *See Leasco*, 468 F.2d at 1340.

To find specific jurisdiction, the Court must determine that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182. Although courts look to whether it was foreseeable to the defendant that its actions would cause injury in the forum State, the Supreme Court has made clear that foreseeability requires that " 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *Id.* at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566). In sum, defendant must have " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.' " *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183. *See also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 32 (2d Cir.1996).

Town Shoes purchased the Airsupply shoes at issue in this case through N.I.R. and Marlboro—both U.S. companies—and paid both of them commissions. Although the shoes were manufactured abroad, the second shipment of shoes was sent from the United States to Town Shoes in Canada. Town Shoes met with representatives of Marlboro regarding the allegedly infringing shoes at a shoe show in New York.

Reasoning from the fact that New York's long-arm statute requires any "passing off" to occur within the state, Town Shoes argues that this Court should not find personal jurisdiction under Rule 4(k)(2) unless a passing off occurred within the United States. New York's statute, however, sets a higher threshold for minimum contacts than is constitutionally required.[18] I find, therefore, that due process does not require that an injury from tortious conduct be proximately caused by conduct occurring within the United States. When American residents have been the victims of tortious conduct, and in particular where American residents have been intentionally solicited or targeted by the allegedly tortious conduct and there are sufficient contacts overall with the United States, a court may find that the exercise of personal jurisdiction would not offend the minimum contacts requirement of due process even where the conduct that proximately causes the injury occurs outside this country's borders. Of course, when there is a weak showing of minimum contacts, the showing of reasonableness must be stronger. *Metropolitan Life Ins.*, 84 F.3d at 568–69. With respect to Town Shoes and Gredico, this is not a case where the passing off occurred in the United States or was directed at American residents. The only victim of any tortious conduct that has any connection with the United States is the owner of the trademark rights which allegedly have been infringed. I find that when all of Town Shoes' contacts with the United States that are related to this action are taken as a whole, they are sufficient—although barely so—to establish minimum contacts.[19]

---

**18.** New York requires a showing that there is a substantial relationship between the business activity in New York and the tortious conduct alleged in order to find jurisdiction under Section 302(a)(1), the "transacting business" prong of New York's long-arm statute. *Cantor Fitzgerald*, 88 F.3d at 156. As New York's highest Court has described, it is essential that there be "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981). In the view of the New York courts, however, Section 302(a)(1) does not extend personal jurisdiction to the limits of due process. *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 764 n. 6 (2d Cir.1983); *Lon-*

*gines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 20–25, 209 N.E.2d 68, 77–80, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). *Cf. Nowak*, 94 F.3d at 715–16 (comparing interpretations of similar provisions in various states' long-arm statutes).

**19.** Town Shoes cites *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), in support of its position that it has insufficient contacts with the United States to justify exercising jurisdiction. In *Helicopteros*, the Court found a defendant's contacts with Texas insufficient to constitute "continuous and systematic" business, and thus insufficient to

I similarly find that Gredico has sufficient minimum contacts under a specific jurisdiction theory to satisfy the first prong of the due process inquiry. As with Town Shoes, Gredico has purchased the allegedly infringing shoes through an agent in the United States, has allegedly met in the United States with Marlboro to discuss their business dealings, and has allegedly infringed the intellectual property rights of an American company. These activities create barely sufficient minimum contacts.

### b. Reasonableness

 The second part of the due process personal jurisdiction test is determining the reasonableness of the exercise of jurisdiction. In undertaking this reasonableness analysis, the Supreme Court has identified the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metropolitan Life Ins.*, 84 F.3d at 568 (citing *Asahi*, 480 U.S. at 113–14, 107 S.Ct. at 1032–33).

### i. The Burden on the Defendants

Litigating a case in New York would be a considerable burden for both Town Shoes and Gredico, given the fact that they are Canadian corporations with very few contacts with the United States. As already observed, this burden is magnified by the fact that the number of allegedly infringing shoes purchased is so small that the expense from any litigation will be disproportionate to the economic impact on their business. "On the other hand, the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metropolitan Life Ins.*, 84

F.3d at 574. Therefore, although this factor cuts in favor of Town Shoes and Gredico, "taken alone, it falls short of overcoming the plaintiff's threshold showing of minimum contacts." *Id.*

### ii. The Interests of the Forum

The dispute between Town Shoes, Gredico, and Aerogroup implicates the interests of the United States insofar as the Lanham Act is applicable to the Canadian defendants' actions. In this case, however, the Lanham Act is only marginally implicated by Town Shoes' and Gredico's Canadian sales, if at all. It is doubtful under these circumstances that a U.S. Court would apply the Lanham Act to Town Shoes' and Gredico's allegedly infringing actions in Canada.

The "usual rule" is that a passing off that occurs in Canada will be governed by Canadian law, not U.S. law. *See Vanity Fair Mills*, 234 F.2d at 639. The exercise of Lanham Act extraterritorial jurisdiction is governed by the Second Circuit's decision in *Vanity Fair Mills*, 234 F.2d at 633. In *Vanity Fair Mills*, the Court of Appeals addressed the issue whether "the Lanham Act provide[s] relief in American courts and under American law against acts of trademark [sic] infringement and unfair competition committed in foreign countries by foreign nationals." *Id.* at 640. The Court, guided by the Supreme Court's decision in *Steele v. Bulova Watch Co.*, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952), set forth the following factors: (1) whether defendant's conduct had a substantial effect on United States commerce; (2) whether defendant is a U.S. citizen; and (3) whether a conflict with trademark rights established under foreign law existed. *See Vanity Fair Mills*, 234 F.2d at 642. The *Vanity Fair Mills* Court stated that even where a domestic defendant is involved, "the absence of one of the [other two] above factors might well be determinative and that the absence of both is certainly fatal." *Vanity Fair Mills*, 234 F.2d at 643. *See also Warnaco Inc. v. VF Corp.*, 844 F.Supp. 940, 950–52 (S.D.N.Y.1994) (applying *Vanity Fair Mills* factors).

---

establish general jurisdiction. *Id.* at 416–18, 104 S.Ct. at 1872–74. The plaintiff does not contend here that Rule 4(k)(2) jurisdiction may be based

on general jurisdiction, but rather on specific jurisdiction.

Town Shoes and Gredico are Canadian corporations and not citizens of the United States In addition, the sale in Canada of the small number of shoes which were purchased through Marlboro could not cause a substantial effect on United States commerce. Of course, foreign sales of infringing goods may have a substantial effect on United States commerce by diverting sales from the plaintiff, causing confusion among consumers, and impacting the plaintiff's income and reputation. *See Warnaco*, 844 F.Supp. at 952. Where a substantial impact has been found from the foreign activities of foreign citizens, however, the scale of the alleged infringement has been far greater than that alleged here. *See, e.g., id.* at 945 (loss of over $6 million in sales). Therefore, *Vanity Fair Mills* indicates that the United States has little or no interest in applying the Lanham Act to Town Shoes and Gredico, and accordingly, this factor does not weigh in favor of the plaintiff.[20]

### iii. *Aerogroup's Interests*

It is more convenient for Aerogroup, an American company, to litigate in the United States rather than Canada. Thus, this factor weighs in favor of Aerogroup.

### iv. *Efficient Administration of Justice*

"In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." *Metropolitan Life Ins.*, 84 F.3d at 574. As noted above, given the number of both United States and Canadian witnesses and documents, this factor does not favor one side or the other. On the other hand, finding jurisdiction over the Canadian defendants would allow all of the litigation concerning the interwoven set of facts alleged in the Complaint to be resolved in one forum. Consequently, this factor also favors Aerogroup.

### v. *Policy Arguments*

As already noted, Canada unquestionably has a strong interest in enforcing its own intellectual property laws with respect to sales which take place exclusively in Canada.

As for the interests of the United States, the Court has uncontested jurisdiction over the primary alleged infringer—an American corporation—which is the source of the shoes sold by Town Shoes and Gredico. Aerogroup can be accorded full relief from this U.S. defendant without an unnecessary burden on Canadian corporations with very minimal contacts to the United States.

Where, as here, there is a weak showing of minimum contacts, there must be a stronger showing of reasonableness. I find that it would be unreasonable to exercise jurisdiction over Town Shoes and Gredico. The key consideration in determining whether exercising jurisdiction is consistent with the Constitution is whether maintenance of the suit would "offend 'traditional notions of fair play and substantial justice.' " *Metropolitan Life Ins.*, 84 F.3d at 568 (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158). As the Advisory Committee notes to Rule 4(k)(2) indicate,

> The district court should be especially scrupulous to protect aliens who reside in a foreign country from forum selections so onerous that injustice could result.

Fed.R.Civ.P. 4(k)(2) advisory committee's note. Exercising jurisdiction over either Town Shoes or Gredico would offend fair play and substantial justice.

## IV. *CONCLUSION*

For the reasons set forth above, Town Shoes' and Gredico's motions to dismiss pursuant to Rule 12(b)(2), Fed.R.Civ.P., are granted.

SO ORDERED.

---

**20.** I note that at this time I need not actually decide whether the Lanham Act's extraterritorial reach encompasses Town Shoes and Gredico. The issue has not been briefed by Town Shoes or Gredico, although in separate motions defendants Bata and Marlboro have briefed it. I address this issue here only to ascertain the relative weight of the United States' interest in this litigation.