**ALLY & GARGANO, INC., Plaintiff,**

v.

**COMPREHENSIVE ACCOUNTING CORP., Defendant.**

84 Civ. 7928 (RWS).

United States District Court,
S.D. New York.

Feb. 22, 1985.

As Amended March 11, 1985.

Davis & Gilbert, New York City, for plaintiff.

Burke & Burke, New York City, for defendant; Michael A. McElroy, Robert J. Marvin, New York City, of counsel.

## OPINION

SWEET, District Judge.

This action arises out of the alleged breach of a written agreement between plaintiff Ally & Gargano, Inc. ("Ally") and defendant Comprehensive Accounting Corp. ("Comprehensive"). Comprehensive now moves to dismiss this action on the ground that it is not subject to the *in personam* jurisdiction of this court. The motion is denied.

**Facts**

Comprehensive is a Delaware corporation with its principal corporate office in Aurora, Illinois. Comprehensive is not qualified to do business in the State of New York; it does not maintain an office in New York; it has no employees in New York, no bank accounts in New York and no telephone listing in New York. Comprehensive is in the business of licensing to accountants ("Franchisees") its service name, service marks and know-how regarding the operation of an accounting practice. Currently,

Comprehensive has approximately 450 Franchisees operating in forty states of the United States, of which fourteen are located in New York State. To sell its franchises, Comprehensive advertises its services and those of its Franchisees nationwide through various media including newspapers, magazines, direct mail solicitation, telephone solicitation and network television commercials. While Comprehensive employees on occasion meet with potential Franchisees at their places of business, these employees have no authority to bind Comprehensive. No franchise agreements are accepted or executed by Comprehensive in any location other than its offices in Aurora, Illinois.

Comprehensive asserts that its contact with New York is limited to the following:

Advertising for, and direct solicitation of, potential Franchisees and clients for existing Franchisees in New York as part of its nationwide activities described above;

occasional trips to New York to consult with Franchisees at their request, at the average of approximately one per year; conducting one or two regional seminars for groups of Franchisees in the New York area annually; and

participating in trade shows in New York at the average of approximately two per year.

On June 3, 1981 Comprehensive entered into an agreement (the "agreement") with the New York advertising firm of Ally & Gargano under which Ally agreed to serve as Comprehensive's advertising agency. One month prior to this retention, representatives of Comprehensive who were in New York for an accounting trade show attended a preliminary presentation at the offices of Ally which was designed to introduce Comprehensive to Ally and give them a sense of what Ally could do for Comprehensive. The terms of the agreement were negotiated either in Aurora, Illinois or by telephone and correspondence between Ally's New York office and Comprehensive's Illinois office. The agreement was executed by both Comprehensive and Ally on June 3, 1981 in Aurora, Illinois. After additional telephonic negotiation, an amended agreement (the "amended agreement") was executed by Ally in New York on July 13 and by Comprehensive in Illinois on July 17.

In fulfillment of the agreement, Ally developed various television advertising programs which were submitted by Ally to Comprehensive for review and approval. Comprehensive transmitted its approval by letter. Comprehensive also prepared various advertisements which were mailed to Ally for placement in periodicals. Comprehensive has had occasional meetings in New York with representatives of Ally for the purpose of developing advertisements to be produced by Ally.

**Discussion**

N.Y.C.P.L.R. § 301 provides that New York courts may exercise jurisdiction over a foreign corporation if the foreign corporation is engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its "presence" here. *Dogan v. Harbert Const. Corp.*, 507 F.Supp. 254 (S.D.N.Y. 1980); *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). The totality of a foreign corporation's contacts with the jurisdiction must be examined to determine whether it is doing business in New York, and the decision in each case will depend on the particular facts of the case. *McIntyre v. Bakers for Democratic Union*, 54 App.Div.2d 872, 388 N.Y. S.2d 587 (1976). Mere solicitation without any other evidence of commercial activity within New York is not sufficient to establish presence. *Miller v. Surf Properties*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). In addition, a plaintiff who is the agent of a defendant cannot rely on its own activities in New York to sustain a claim of jurisdiction. *Haar v. Armedoris Corp.*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973). Similarly, the activities of a foreign corporation's franchises in New York cannot be relied upon to establish jurisdiction over the franchisor. *Delagi v. Volkswagenwerk Ag of Wolfsburg*, 29

N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972); *see also J.E.T. Advertising Associates v. Lawn King, Inc.*, 84 App.Div.2d 744, 443 N.Y.S.2d 745 (2d Dep't 1981).

 The facts presented in this case demonstrate that Comprehensive is doing business in New York in a manner sufficient to satisfy the requirements of § 301. Comprehensive regularly solicits potential franchises and prepares advertising for existing franchises in New York. While a foreign corporation may not be held present in New York solely on the basis of its control over its New York franchises, *Delagi v. Volkswagenwerk Ag. of Wolfsberg, supra*, 328 N.Y.S. at 657, 278 N.E.2d at 897, in this case Comprehensive actively engaged in business in New York designed to service its franchisees. Its representatives travel to New York to consult with the fourteen franchisees it has in New York, and it conducts regional seminars and attends trade shows in New York. Its representatives travelled to New York to consult with Ally about and participate in the creation of advertising developed as a service to both its New York franchisees and its franchisees elsewhere. Although Ally's activities in New York as Comprehensive's agent cannot be relied upon to establish long-arm jurisdiction, Comprehensive's own activities in New York, including its visits to consult with Ally, can be considered as a factor. *See Katz Communications, Inc. v. Evening News Association*, 705 F.2d 20, 25 (2d Cir.1983); *Adam Young, Inc. v. F & S Comm. News, Inc.*, slip op. 83 Civ. 7278 (S.D.N.Y. May 25, 1984). Because Comprehensive is engaged in both solicitation plus commercial dealings in New York on a regular basis, it is doing business in New York "not occasionally or casually but with a fair measure of performance and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917).

Because Comprehensive meets the test of doing business in New York, it is subject to personal jurisdiction in New York and there is, therefore, no need to resolve the issue of whether Comprehensive would be subject to the jurisdiction of New York on the basis of N.Y.C.P.L.R. § 302(a).

For the above reasons, Comprehensive's motion to dismiss is denied.

IT IS SO ORDERED.