**H. HELLER & CO., INC., Plaintiff,**

v.

**NOVACOR CHEMICALS LTD., Defendant.**

**No. 88 Civ. 0340 (PKL).**

United States District Court, S.D. New York.

Oct. 25, 1988.

---

Debevoise & Plimpton, New York City (John H. Hall, Edwin G. Schallert, Albert L. Wells, Jr., of counsel), for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Moses Silverman, Robert Tilewick, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

Plaintiff H. Heller & Co. ("Heller"), a Delaware corporation with its principal

place of business in Palm Beach, Florida, has brought this action against Novacor Chemicals Ltd. ("Novacor" or "NCL"), a Canadian corporation with its principal place of business in Calgary, Alberta, Canada, seeking to recover commissions allegedly owing under an oral agreement. Novacor is a manufacturer of plastic raw materials and is a wholly-owned subsidiary of NOVA, an Alberta corporation.

Plaintiff alleges that in 1985 it entered into an agreement with Union Carbide Canada Ltd. ("UCC") under which Heller was to receive a commission of five percent of the sale price of all UCC material purchased by Atlantic Packaging Product Ltd. ("Atlantic"). In February 1987, UCC sold its polyethylene plant and associated business to NOVA. Plaintiff alleges that Novacor was responsible for continuing the polyethylene business previously run by UCC and that the commission agreement between Heller and UCC was assigned to Novacor. Heller and Novacor continued to perform under the agreement through October 1987. At the end of September 1987, Novacor stated that it intended to end the agreement after October 31, 1987. Thereafter, defendant refused to pay Heller commissions for materials shipped to Atlantic by Novacor. Heller now seeks to recover commissions on all sales to Atlantic by Novacor since November 1, 1987, as well as commissions on all future sales.

The case is currently before the Court upon defendant's motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction or dismissing the action on *forum non conveniens* grounds.

## DISCUSSION

### A. *Personal Jurisdiction*

■ In deciding whether to dismiss plaintiff's complaint for lack of personal jurisdiction over the defendant, the plaintiff's pleadings are to be construed in the light most favorable to it. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Although Heller ultimately bears the burden of establishing by a preponderance of the evidence this Court's jurisdiction over Novacor, *see Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981), given that no evidentiary hearing has been held, plaintiff at this juncture must merely make out a *prima facie* case of personal jurisdiction. *See Welinsky v. Resort of the World, D.N.V.,* 839 F.2d 928, 930 (2d Cir.1988); *Cutco Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986).

■ Subject matter jurisdiction over the claims against Novacor is based on diversity of citizenship, 28 U.S.C. § 1332. Therefore, the issue of personal jurisdiction is determined by the law of the forum state, in this case, New York. *See, e.g., Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963). New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302 set forth the bases upon which New York courts may assert jurisdiction over a nonresident foreign corporation. Plaintiff does not dispute Novacor's assertion that CPLR § 302 is inapplicable to this case.[1] Therefore, plaintiff must show that Novacor was "doing business" within the meaning of CPLR § 301 in order to make out a *prima facie* case of personal jurisdiction over the defendant.

### 1. CPLR § 301: "Doing Business"

■ CPLR § 301 states that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." With respect to foreign corporations § 301 preserves the case law existing prior to its enactment, which provided that a corporation is "doing business" and is therefore "present" in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York con-

---

1. New York's long arm statute, CPLR § 302, applies only to a "cause of action arising out of the transaction of business in New York." *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 536 n. 1, 281 N.Y.S.2d 41, 43 n. 1, 227 N.E.2d 851, 853 n. 1, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). Here, the entire transaction occurred in Canada and therefore § 302 is inapplicable.

tacts, if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917); *accord Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y. S.2d 456, 434 N.E.2d 692 (1982). The test is said to be "simple and pragmatic." *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 432, 260 N.Y.S.2d 625, 628–29, 208 N.E.2d 439, 441 (1965). A foreign corporation is amenable to suit in New York if it "is engaged in such a continuous and systematic course of 'doing business' as to warrant a finding of its 'presence' in this jurisdiction." *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d at 536, 281 N.Y.S.2d at 43, 227 N.E.2d at 853, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967). Occasional or casual connections with the state of New York will not suffice. *Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc.*, 495 F.Supp. 253, 256 (S.D.N.Y.1980). However, the only clear conclusion derivable from these decisions is that a "doing business" determination is unique to each case, requiring consideration of all the facts and circumstances, without relying unduly on any one factor.

As a threshold matter, the Court notes that none of the "classic indicia" of "doing business" are present in this case. *Pneuma–Flo Systems v. Univ. Machinery Corp.*, 454 F.Supp. 858, 861 (S.D.N.Y.1978); *see also Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 565 (S.D.N.Y.1985). Novacor is not licensed to conduct business in New York. It maintains no local offices, employees, telephone listings or designated agents in New York. It has no bank account or other property within the state. Affidavit of Warren J.

Courtney ("Courtney Aff. I"), sworn to on April 29, 1988, ¶ 4.

■ Plaintiff, unable to rely on these classic factors of § 301 jurisdiction, argues that Novacor is "doing business" in New York because Novacor has allegedly made sales and solicited business in this state. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985). In support of its claim plaintiff has amassed 220 jurisdictional "contacts" with New York. The Court notes at the outset that "[a] corporation's New York contacts must be evaluated not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York." 1 J. Weinstein, H. Korn, A. Miller, *New York Civil Practice*, ¶ 301.16, at 3–32 to 3–33. Upon close analysis, the contacts alleged by plaintiff fall into two categories. They are (1) Novacor's sales to the Far East, using four New York brokers and (2) sales to New York by an affliate of Novacor, Novacor Chemicals, Inc. ("NCI").

Turning first to Novacor's own activity in New York, plaintiff alleges that NCL made substantial sales to and shipments[2] into New York. These transactions involved sales by Novacor to the Far East. In these transactions Novacor made sales overseas, using New York brokers or exporters. The products were sent directly from Canada to the Far East. Payments were made by the Far Eastern companies directly to Novacor. The brokers received a one percent commission on these sales[3] after Novacor received payment directly from the buyer. In essence, Novacor sells its product in the Far East through independent agencies[4] located in New York.

---

**2.** Plaintiff states, without citation to the record, that "NCL has formal contracts for the sale, and in some cases shipment, of chemicals to New York companies." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Heller Memorandum") at 16. NCL entered into agreements with New York brokers in furtherance of earlier agreements entered into among Novacor, Far Eastern companies and the particular New York broker. Yet, Novacor did not ship goods into New York but rather sent them directly from Canada to the Far East.

**3.** Plaintiff also states that "NCL's sales to just three of its many New York customers exceed $40 million annually." Heller Memorandum at 2. The companies referred to are the exporters involved in the Far Eastern sales. *Id.* at 16 n. 6. But, as noted above, the brokers only received a fixed percentage of these sales making the $40 million figure misleading.

**4.** Plaintiff has offered no evidence that the New York brokers involved in these transactions were anything other than independant agents.

New York courts have long held that the type and extent of services performed by the brokers in this case are insufficient to establish the jurisdictional presence of a foreign corporation. *See, e.g., Cohen v. Vaughan Bassett Furniture Co.*, 495 F.Supp. 849 (S.D.N.Y.1980); *Fried v. Lakeland Hide & Leather Co.*, 14 Misc.2d 208, 157 N.Y.S.2d 633 (Sup.Ct.1956); *Knapp v. Roberton Manufacturing Co.*, 155 N.Y.S.2d 490, 493 (Sup.Ct.1956). A foreign manufacturer's transactions in New York through an independant agency do not make the foreign corporation amenable to suit in New York. *See, e.g., McShan v. Omega Louis Brandt Et Frere*, 536 F.2d 516, 517–18 (2d Cir.1976); *Cohen v. Vaughan Bassett Furniture Co.*, 495 F.Supp. 849, 851–52 (S.D.N.Y.1980) (independent sales agent soliciting business for defendant in "continuous and systematic manner" insufficient). Nor, even taking at face value plaintiff's allegation that Novacor made over $40 million dollars in sales into New York can jurisdiction over defendant be found. Jurisdiction has been found lacking on far more substantial sales activity in New York. *Nordic Bank PLC v. Trend Group. Ltd.*, 619 F.Supp. 542 (S.D.N.Y.1985) (sale of over $100 million in commercial paper to New York brokerage firms). In the present case, Novacor's contacts with New York due to its use of brokers to effect sales to the Far East are limited, sporadic, and not so substantial and continuous as to support a finding that Novacor is doing business here.

■ Plaintiff also alleges that Novacor is subject to jurisdiction under the solicitation-plus rule. Heller concedes, as it must, that the long-standing New York rule is that solicitation alone, no matter how substantial, will not subject a foreign corporation to the jurisdiction of the New York courts. *See Laufer*, 55 N.Y.2d at 310, 434 N.E.2d at 694, 449 N.Y.S.2d at 459; *Miller v. Surf Properties*, 4 N.Y.2d 475, 480, 151 N.E.2d 874, 876, 176 N.Y.S.2d 318, 321 (1958). But once a plaintiff establishes solicitations in New York by a foreign entity, then certain additional "activities of substance" may create jurisdiction. *See Laufer v. Ostrow*, 55 N.Y.2d 305, 310,

449 N.Y.S.2d 456, 459, 434 N.E.2d 692, 695 (1982). Generally, however, once solicitation is found in any substantial degree courts have required very little more to support a conclusion of "doing business." *See Beacon Enterprises v. Mary Rose Menzies*, 715 F.2d 757, 762 (2d Cir.1983); *Bulova Watch Co., Inc. v. K. Hattori & Col, Ltd.*, 508 F.Supp. 1322, 1344 (E.D.N.Y. 1981); *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir.1970). The "plus" factor asserted by plaintiff primarily consists of a few NCL representatives' occasional business trips or phone calls to New York, and an assertion by an ex-employee of NCL, who had worked at NCL over four years ago, that NCL/NCI occasionally services customers or contracts in New York.

As a matter of law, occasional contacts such as these have been uniformly recognized as insufficient to satisfy the "solicitation plus" rule. *See New World Capital Corp. v. Poole Truck Line, Inc.*, 612 F.Supp. 166 (S.D.N.Y.1985) (occasional sales forays and visits to solicit business insufficient); *Beacon*, 715 F.2d at 763 (visits to solicit and negotiate contracts); *Stark Carpet Corp. v. M–Geough Robinson, Inc.*, 481 F.Supp. 499 (S.D.N.Y.1980) (communication by mail has little weight in evaluating jurisdictional contacts). Indeed the cases relied on by plaintiff all contain contacts with this district not directly related to the solicitation. *See Scanapico v. Richmond, Fredericksburg & Potomac R. Co.*, 439 F.2d 17 (2d Cir.1970) (defendant's freight cars regularly passed through New York and connecting railroads sold through tickets which were good on defendant's lines); *Ally & Gargano, Inc. v. Comprehensive Accounting Corp.*, 603 F.Supp. 923 (S.D.N.Y.1985) (business visits combined with attendance at trade shows and conduct of seminars). Plaintiff has failed to demonstrate that Novacor did anything more than solicit sales in New York. The contacts of NCL, standing alone, are therefore insufficient to sustain personal jurisdiction over Novacor.

Yet, Heller alleges that, in addition, contacts by Novacor Chemicals Inc. ("NCI")

with New York, involving the sale of NCL goods, should be attributed to defendant in assessing its presence. NCI is a Delaware corporation with its principal place of business in Illinois. NCI is wholly owned by NOVA Energy Systems Inc., a Delaware corporation, which is wholly owned by NOVA, the parent of the defendant NCL.

■ New York law provides two grounds for the attribution to a foreign corporation of the acts of another entity for the purpose of assessing personal jurisdiction over a foreign corporation. The first basis for attribution is that the other entity is a "mere department" of the foreign corporation. *See, e.g., Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 854, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Tokyo Boeki (U.S.A.), Inc. v. SS Navarino,* 324 F.Supp. 361, 366 (S.D.N.Y.1971). The second basis is that the other entity acts as an agent of the foreign corporation. *See, e.g., Frummer,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851.

■ A subsidiary will be considered a "mere department" only if the foreign parent's control of the subsidiary is pervasive enough that the corporate separation is more formal than real. *See Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.,* 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965). In making these evaluations the courts look to factors beyond mere stock ownership, such as the subsidiary's financial dependency on the parent, the parent's interference in assignment of top executive personnel of the subsidiary, failure to observe corporate formalities, and control by the parent of the subsidiary's day-to-day operations. *See Volkswagenwerk A.G. v. Beech Aircraft Corp.,* 751 F.2d 117, 120–122 (2d Cir.1984).

In the present case, NCI's relationship appears to fall short of that corporate intimacy which has lead to "mere department" holdings. *See Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.,* 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965). In *Taca,* the New York Court of Appeals found that the New York corpora-

tion was a "mere department" of the foreign parent. The facts in *Taca,* although similar, are stronger than the facts at bar. In *Taca,* the English company owned, through an intermediate Canadian entity, all the stock of the American subsidiary. The subsidiary sold and serviced Rolls-Royce products. There were common directors and key executives were appointed by the parent corporation. All of the American subsidiary's net income eventually appeared on the consolidated balance sheet of the English corporation. The officers of the entities conferred to set American policy. Customer warranties emanated from the parent. Technical training was given in England. All sales literature used in New York was written and published in England.

The other case relied on by plaintiff also demonstrates greater control by the foreign parent than is evident in the present case. In *Tokyo Boeki (U.S.A.) Inc. v. SS Navarino,* 324 F.Supp. 361 (S.D.N.Y.1971), the Court relied on the following facts in finding that Boeki U.S.A. and Boeki Japan were the same entity: the regular interchange of managerial and supervisory personnel, the complete ownership of the subsidiary with the parent deriving the benefit of all the subsidiary's profits, the listing of the subsidiary as an overseas office of the parent, the exchange of a variety of records and documents, the delegation to Boeki USA of a majority of Boeki Japan's steel products trade with American customers, the request by Boeki Japan that Boeki USA solicit business from Cambridge Lee Metal Company (which accounted for one-fourth of Boeki USA's sales), and the overlap of directors.

In comparision, Heller has not established that Novacor and NCI have so disregarded the formal indicia of corporate separation that the latter is a "mere department" of the latter. NCI sells products in the United States that are manufactured by NCL in Canada, using assets of NOVA corporation of Alberta. NOVA pays NCL for its manufacturing function. Affidavit of Warren J. Courtney ("Courtney Aff. II"), sworn to on September 15,

1988. For its sales NCI will contract with a purchaser (or broker) in the United States, and will direct NCL to ship specified products to their customers. NCI purchases the products from NOVA at a market determined rate. Affidavit of Michael H. Nairne ("Nairne Aff."), sworn to on September 15, 1988. In addition, NCI pays NCL at a negotiated rate for certain support services. These services include technical, legal, accounting and other support services requested by NCI.

Plaintiff maintains that the identity of most of the officers of each corporation and the virtually identical boards of directors evidence the requisite control by Novacor over NCI. But New York courts have held that stock control, interlocking directors and officers and the like are merely indicia and not conclusive proof of corporate synonymity. *Musman v. Modern Deb, Inc.*, 50 A.D.2d 761, 377 N.Y.S.2d 17 (1st Dep't 1975). *See also Marantis v. Dolphin Aviation, Inc.*, 453 F.Supp. 803, 807 (S.D.N.Y.1978) (three of four officers of subsidiary also officers of parent; all but one director of subsidiary a director or officer of parent; virtually identical boards); *Oostdyk v. British Airtours Ltd.*, 424 F.Supp. 807, 809–10 (S.D.N.Y.1976) (parent owned all stock of subsidiary; common directors). Outside of common ownership, the only evidence of control by Novacor over NCI is the communication between NCL and and two American corporations regarding contracts of sale between NCI and the American corporations. These isolated instances are insufficient to establish that the "day to day control by the parent [is] 'so complete that the subsidiary is, in fact, merely a department of the parent'." *Bellomo v. Penn. Life Co.*, 488 F.Supp. 744, 745 (S.D.N.Y.1980) (*quoting Delagi v. Volkswagenwerk A.G.*, 29 N.Y.2d at 432, 328 N.Y.S.2d 653, 278 N.E.2d 895). Additionally, the fact that NCL provided support services to NCI establishes no more than that an affiliate corporation, for a fee, provided NCI with support services such as might be employed in the open market. It does not establish control of NCI by Novacor. *See Baird v. Day & Zimmerman, Inc.*, 390 F.Supp. 883 (S.D.N.Y.1974), *aff'd*

*mem. sub nom Baird v. Harvey Aluminum Co., Inc.*, 510 F.2d 968 (2d Cir. 1975).

Nor has plaintiff established that NCI is a mere "agent" of NCL. Although corporate affiliation may, in light of the facts of a given case, give rise to a "valid inference" of agency, no such inference arises here. *See Delagi v. Volkswagenwerk A.G.*, 29 N.Y.2d 426, 431, 328 N.Y.S.2d 653, 656, 278 N.E.2d 895, 896 (1972). Novacor's relationship to NCI seems no different from that of any manufacturer to its major distributor. To constitute an agent for jurisdictional purposes the "alleged agent must have acted in this state for the benefit of and with the knowledge and consent of the non-resident and the non-resident must exercise some element of control over the agent." *Selman v. Harvard Medical School*, 494 F.Supp. 603, 611 (S.D.N.Y.) (*quoting Louis Marx & Co. v. Fuji Seiko Co., Ltd.*, 453 F.Supp. 385, 390 (S.D.N.Y. 1978)), *aff'd mem. op.*, 636 F.2d 1204 (1980).

■ In the present case NCI does not act on behalf of NCL. At NCI's direction, NCL will ship products to locations specified by NCI based on NCI's sales orders. *See* Courtney Aff. II ¶ 6. Plaintiff's major argument consists of an isolated quote from a press release announcing a product price increase, in which NCI is described as the "marketing arm" of NCL. *See* Heller Memorandum at 21. This phrase can describe numerous relationships, including that of an independant broker, and is not coterminous with the jurisdictional definition of "agency" used by the courts. This single press release, standing alone, is insufficient to show NCI was a mere agent of NCL for jurisdictional purposes. *Cf. Baird*, 390 F.Supp. at 885 (advertisement in telephone directory listing subsidiary as sales agent).

Finally, plaintiff argues that if NCI were not marketing NCL's goods in the United States, NCL would have to do so entirely on its own thus reflecting the essential nature of the New York contacts. *See Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 121 (2d Cir.1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95

**56**

(1968). This factor is not present here. It is difficult to comprehend how NCI's sales can be essential to NCL when NCL receives no profit from these sales. Courtney Aff. II at ¶ 6. Plaintiff's argument that New York is a "crucial market" for export sales and that "[t]o participate in this market, NCL necessarily has contacts with New York" is without merit. Heller Memorandum at 16. NCI's sales of product shipped to New York in 1987 accounted for approximately 2.33% of NCI's total sales for that year. Nairne Aff., ¶ 6. Additionally, NCL's own dealings with brokers located in New York accounted for only 11.5% of NCL's total off-shore sales and only 4.01% of NCL's total annual sales. Courtney Aff. II, ¶ 4. And even if the sales to New York were essential there is nothing in the record that suggests that NCI's activities could not be performed by independant brokers, just as NCL performs other of its off-shore sales. Plaintiff has failed to make a *prima facie* showing that NCL would "do business" in New York absent NCI's activities.

Therefore, despite the relationship between Novacor and NCI, this Court is obliged to hold that Novacor has successfully avoided the use of those aspects of corporate organization and operation which have been held by New York courts to render a foreign corporation amenable to jurisdiction within this state.

## CONCLUSION

It is found that upon the facts submitted the defendant corporation was not doing business in New York within the meaning of the New York statutes and authorities and that, consequently, personal jurisdiction has not been obtained over the defendant. Accordingly defendant's motion to dismiss for lack of personal jurisdiction is granted. Therefore, the Court need not reach defendant's motion to dismiss for *forum non conveniens.*

SO ORDERED.