**In re: MAGNETIC AUDIOTAPE ANTITRUST LITIGATION**

**Texas International Magnetics, Inc., f/k/a Hix Recording, Crown Magnetics, Inc. and Premier Multimedia, Inc., Plaintiffs,**

v.

**BASF AG Aktiegesellschaft, Defendant.**

Nos. 99 CIV. 1580(LMM), 00 CIV. 1982(LMM).

United States District Court, S.D. New York.

April 25, 2001.

---

## MEMORANDUM AND ORDER

MCKENNA, District Judge.

Texas International Magnetics, Inc., Crown Magnetics, Inc. and Premier Multimedia, Inc. ("plaintiffs") have filed complaints alleging antitrust conspiracy against BASF Aktiegesellschaft ("BASF AG") and SKM, Ltd (collectively "defendants"). BASF AG now moves to dismiss the complaint brought against it pursuant to Fed.R.Civ.P. 12(b)(2) and for summary judgment pursuant to Fed.R.Civ.P. 56; SKM moves to dismiss the complaint brought against it pursuant to Fed. R.Civ.P. 12(b)(2). For the reasons set forth below BASF AG's motion to dismiss is granted, its motion for summary judgment is denied as moot and SKM's motion to dismiss is granted.

## Background

Plaintiffs have filed two lawsuits alleging a conspiracy to fix the price of magnetic audiotape in the United States during the period 1991 to 1999. Plaintiffs first filed suit against a number of companies, including SKM ("the original action"), and later filed a second suit against BASF AG alone ("the second action"). BASF AG is organized under the laws of the Federal Republic of Germany with its principal place of business located in Ludwigshafen, Germany. It is the parent company of BASF Magnetics Corporation ("BASF Corp."), located in Bedford, Massachusetts and of BASF Magnetics GmbH ("BASF GmbH"), located in Mannheim, Germany, both of which are defendants in the original action. SKM is a corporation organized under the laws of Korea and its principal place of business is located in Seoul, Korea. SKM is the parent corporation of SKMA, Inc., a Delaware corporation with its principal place of business in Long Beach, California, and is a defendant in the original action.

## Legal Standard

Plaintiffs bear the burden of establishing this Court's jurisdiction over the defendants. *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). Prior to discovery, a motion to dismiss pursuant to Rule 12(b)(2) may be defeated if the plaintiffs' complaint and affidavits contain sufficient allegations to establish a prima facie showing of jurisdiction.[1] *Id.* Moreover, the Court must assume the truth of the plaintiffs' factual allegations, *PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997), even in light of defendants' "contrary allegations that place in dispute the factual basis of plaintiff[s'] prima facie case." *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F.Supp. 175, 178 (S.D.N.Y.1995).

## Discussion

### Jurisdiction Under Section 12 of the Clayton Act

Plaintiffs' primary argument for jurisdiction over BASF AG and SKM rests on Section 12 of the Clayton Act, 15 U.S.C. § 22. The parties, however, dispute the interpretation and jurisdictional requirements of Section 12. Section 12 provides:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the

---

1. In considering a Rule 12(b)(2) motion, the Court may consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56. *See Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*, 26 F.Supp.2d 593, 604 (S.D.N.Y.1998).

district in which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. The first clause of Section 12 relates to venue, the second to service of process, and therefore, jurisdiction. The dispute centers on whether the jurisdiction provision operates independently from the venue provision, specifically, whether "in such cases" in the second clause refers to "any suit, action, or proceeding under the antitrust laws against a corporation" or only to antitrust actions against corporations brought in a judicial district in which the corporation is either an "inhabitant," "may be found" or "transacts business." If the first interpretation is adopted, plaintiffs can rely on 28 U.S.C. § 1391(d) which provides for venue in antitrust actions against foreign corporations "in any district" and on the second clause of Section 12 for personal jurisdiction over defendants based on a minimum contacts analysis considering their contacts with the United States as a whole. If the second interpretation prevails the service provision is only effective when, pursuant to Section 12's first clause, the action is brought in a district where the defendant resides, is found or transacts business. The Court agrees with the several district courts in this Circuit that have addressed this issue and held that the first, and more expansive, interpretation of Section 12 is the proper one, *see Daniel v. Am. Bd. of Emergency Med.*, 988 F.Supp. 127 (W.D.N.Y.1997); *Gen. Elec. Co. v. Bucyrus–Erie Co.*, 550 F.Supp. 1037 (S.D.N.Y. 1982); *Scriptomatic, Inc. v. Agfa–Gevaert, Inc.*, No. 72 Civ. 4482, 1973 WL 830 (S.D.N.Y. June 28, 1973), and is unpersuaded by BASF AG's reliance on a recent opinion by the Court of Appeals for the District of Columbia that held to the contrary.

In *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C.Cir. 2000), the Court of Appeals for the District of Columbia held that the "invocation of the nationwide service clause rests on satisfying the venue provision." *Id.* at 1350. In so holding, the Court stated that "we align ourselves with the position taken by the Second Circuit [in *Goldlawr, Inc. v. Heiman*, 288 F.2d 579 (2d Cir.1961), *rev'd on other grounds*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) ]." However, the *Goldlawr* Court does not appear to have been squarely presented with this issue. The case originated in the Eastern District of Pennsylvania, where the court, finding no jurisdiction, transferred the case to the Southern District of New York pursuant to 1406(a). The defendants argued they had not been served and the plaintiff did not "challenge the determination that the transferor court did not have personal jurisdiction over [plaintiffs]." 288 F.2d at 582. Thus, the question presented appeared to be whether transfer was appropriate while jurisdiction was still lacking, not whether jurisdiction, under Section 12 or any other provision, had been properly found.

■ With respect to the merits of the argument that the proper interpretation of Section 12 is that the extraterritorial service provision is not predicated upon satisfaction of the venue provision, this Court agrees with *General Electric Co. v. Bucyrus–Erie Co.*, 550 F.Supp. 1037 (S.D.N.Y. 1982), where the court found that:

> when "such" precedes a noun it is assumed to refer to a particular antecedent noun and any dependant adjective or adjectival clauses modifying that noun, but not to any other part of the preceding clause or sentence. Applying this rule to section 12, "in such cases" would refer to "any suit, action, or proceeding under the antitrust laws against a corporation," and not to anything else in section 12's first clause.

*Id.* at 1042 n. 7 (citing Webster's Third International Dictionary (unabr. ed.1963)). Further, the Court agrees with the conclusion of the Court of Appeals for the Ninth Circuit that there is nothing in Section 12 "which renders its venue provision exclusive and precludes the application of any other federal venue statute." [2] *Go–Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1410, 1410–13 (9th Cir.1989). Further supporting the conclusion that the proper interpretation of Section 12 is to permit § 1391(d) to enlarge the scope of venue, both the *Go–Video* and *Bucyrus–Erie* decisions also relied on the Supreme Court decision in *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972), where the Court held that 28 U.S.C. § 1400(b) which provided for venue in patent infringement actions was not exclusive and did not preclude the application of § 1391(d). *Id.* at 707, 92 S.Ct. 1936. The Court found that § 1391 reflects the rule that suits against aliens are "outside the scope of all venue laws" and that the application of § 1391(d) could not be precluded by any specific venue provision, including the one contained in § 1400(b). *Id.* at 711, 713–14, 92 S.Ct. 1936.

This Court therefore holds that plaintiffs can rely on § 1391(d) for venue and on Section 12's extraterritorial service and personal jurisdiction provision to the "bounds permitted by the due process clause of the Fifth Amendment." [3] *Leasco Data Processing Equip. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir.1972) (interpreting a similar venue and service provision of the Securities Exchange Act of 1934).

**Due Process Analysis** [4]

 "The due process test for personal jurisdiction has two related components: the minimum contacts' inquiry and the 'reasonableness' inquiry." *Metro. Life Ins.*, 84 F.3d at 567. The Court must first review defendants' contacts with the United States and if the "constitutionally necessary" minimum is lacking, the inquiry ends. *Id.* (quoting *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir.1990)). Plaintiffs claim that defendants are subject to both general and specific jurisdiction in the United States. General jurisdiction arises if the defendants' business contacts with the United States have been "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "This is a fact-specific inquiry that requires courts to

**2.** As also noted by the Ninth Circuit and other courts, the legislative history of Section 12 provides no guidance on the proper interpretation of this portion of Section 12 or specifically on whether Congress intended service of process under Section 12 to be predicated upon satisfaction of its venue provision. *See Go–Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1410 (9th Cir.1989).

**3.** Thus, the Court will not address plaintiffs' arguments that BASF AG and SKM are subject to jurisdiction under either Fed.R.Civ.P. 4(k)(2) or the New York long-arm statute.

**4.** With respect to the appropriate analysis under the Fifth Amendment, this Court agrees with the court in *Aerogroup Int'l, Inc. v. Marl-*

*boro Footworks Ltd.*, 956 F.Supp. 427 (S.D.N.Y.1996), that

[t]he limits on personal jurisdiction based on national contacts are contained in the Due Process Clause of the Fifth Amendment which governs the federal government. Much of the Supreme Court's personal jurisdiction constitutional jurisprudence is based, however, on the Due Process Clause of the Fourteenth Amendment, which is applicable to the States. There is no reason that the test for the extent of governmental power allowed by the Due Process Clause would be interpreted differently for the Fifth as opposed to the Fourteenth Amendment, and, therefore, this Court shall draw on the relevant jurisprudence from both Amendments. *Id.* at 439 n. 16.

assess the defendant's contacts 'as a whole.'" *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F.Supp. 427, 439 (S.D.N.Y.1996) (quoting *Metro. Life Ins.*, 84 F.3d at 570).

■ Specific jurisdiction will be found if the litigation results from alleged injuries that "arise out of or relate to" defendants' activities in the United States, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868), and the Court determines that the defendants have "purposefully availed" themselves of the privilege of doing business in the United States to the extent that they could "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

**BASF AG Jurisdictional Analysis**

**1. General Jurisdiction**

BASF AG lists its shares on the New York Stock Exchange ("NYSE"), made various SEC filings and held a press conference announcing the listing of BASF AG on the NYSE. However, the Second Circuit has held that, "without more," the listing of shares on NYSE and related activities, such as SEC filings, "are insufficient to confer jurisdiction." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir.2000). Plaintiffs also allege that BASF AG sold a substantial amount of products within the United States and direct the Court to the eighty-seven page 1999 BASF Annual Report, but do not identify where in the Report United States sales are attributed to BASF AG instead of a subsidiary. The fact that BASF AG maintains a joint bank account with Goldman Sachs in New York because of a settlement agreement in an unrelated lawsuit is plainly not "central" enough to

BASF AG activities to warrant a finding of personal jurisdiction. *Metro. Life Ins.*, 84 F.3d at 572. Taken in the aggregate or individually, BASF AG's contacts with the United States do not support a finding of personal jurisdiction over BASF AG.

**2. Subsidiary Contacts**

■ As explained by the court in *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. 114 (S.D.N.Y. 1988), whether a parent-subsidiary relationship is of the nature that the subsidiary's contacts can be imputed to the parent requires the same analysis whether it is a question of national contacts, as it is here, or state contacts. *Id.* at 124 n. 11 (citing *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293–95 (3d Cir.1985)). Thus, the relevant inquiry is whether there are any indications that the parent is in direct or indirect control of the subsidiary so that the subsidiary is a "mere department" or "agent" of the parent. *L'Europeenne de Banque*, 700 F.Supp. at 124; *see Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998).

■ A subsidiary will be found an agent of the parent corporation "when [the subsidiary] provides services beyond mere solicitation and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir.1967); *see Jazini*, 148 F.3d at 184 ("To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do if it were here by its own officials.'" (quoting *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851

(1967))). Here, BASF AG was not involved in the magnetic audiotape business during the conspiracy period as alleged in the complaint, so that neither BASF Corp. nor BASF GmbH could have been doing what BASF AG would do in the United States if its subsidiaries did not exist.

 To determine whether an entity is a "mere department" of its parent, the Court considers four factors: (1) common ownership; (2) the subsidiaries' financial dependency on BASF AG; (3) the degree to which BASF AG interferes in the selection and assignment of the subsidiaries' executive personnel and fails to observe corporate formalities; (4) the degree of control exercised by BASF AG over the subsidiaries' marketing and operational policies. *Jazini*, 148 F.3d at 185 (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120–22 (2d Cir.1984)). With respect to a subsidiary being a "mere department" of a parent, the fact that BASF AG owns all stock of BASF Corp. and BASF GmbH,, while essential, alone is insufficient. *Id.* Plaintiffs next assert that BASF AG is responsible for the business management of BASF Group which includes BASF Corp. and BASF GmbH, and direct the Court to the Address to the Board of Executive Directors by Dr. Jurgen F. Strube provided as a part of a news conference to commemorate the listing of BASF AG shares on the New York Stock Exchange. (Pls.Ex. A.) Plaintiffs also direct the Court to the 1999 BASF Annual Report, without citing to where in this report there are facts that support the allegation that BASF AG is "responsible for the business management of BASF Group." (Pls. Opp'n at 14.) Although both of these sources may very well contain statements to the effect that BASF AG and its subsidiaries share common views and perspectives, this falls far short of providing actual factual allegations to support a finding that BASF AG dominated its subsidiaries to such an extent that jurisdiction in this Court is appropriate. Nor does the fact that BASF AG management irregularly visited the United States to discuss business with management of BASF Corp., (Pls. Opp'n at 11), evidence anything more than ordinary supervision of a subsidiary by a parent, which is insufficient to subject the parent to jurisdiction. *See Volkswagenwerk*, 751 F.2d at 120. Plaintiffs also allege that "there is a common use of employees between the parent and subsidiaries" an example of which is that "several employees who have worked for BASF Corp., have also subsequently held positions with BASF GmbH [and] BASF Corp." (Pls. Opp'n at 14.) However, this is insufficient to show that the subsidiaries are mere departments of BASF AG. *Jazini*, 148 F.3d at 185. Finally, plaintiffs point to BASF AG's use of "Verbund", a "philosophy and practice that pools the resources of all of the subsidiaries of BASF AG," (Pls. Opp'n at 14), as a basis for finding the necessary interrelation. However, the fact that BASF AG and its subsidiaries share some sort of corporate ethos is insufficient to find that the parent and subsidiary are so intertwined that the subsidiaries' national contacts should be imputed to the parent.

This Court therefore finds that none of plaintiffs' allegations support jurisdiction over BASF AG under either theory of attribution.

### 3. Specific Jurisdiction

#### A. Effects Test

 Plaintiffs argue that BASF AG is subject to specific jurisdiction based on the effect the alleged price-fixing conspiracy had in the United States. Plaintiffs allege that "[BASF GmbH] and its co-conspirators foresaw and intended that their price-

fixing activity would have an effect on the pricing of the magnetic audiotape throughout the United States .... In light of the effects that BASF AG, [BASF GmbH], intentionally produced in the United States market, the exercise of personal jurisdiction over BASF AG is proper." (Pls. Opp'n at 17.) However, without allegations that demonstrate either that BASF AG was a direct participant in the conspiracy or that it exercised such control over BASF GmbH that the latter's contacts should be imputed to BASF AG, plaintiffs' allegations cannot satisfy the minimum contacts required by due process. *See Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F.Supp. 427, 439 (S.D.N.Y.1996).

## B. Co–Conspirator Contacts

 "In order to rely upon a conspiracy theory as its basis for jurisdiction, . . . [P]laintiffs must allege all of the elements setting forth a prima facie case of conspiracy and 'allege specific facts warranting the inference that the defendants were members of the conspiracy.'" *Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*, 26 F.Supp.2d 593, 602–603 (S.D.N.Y.1998) (quoting *Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F.Supp. 215, 222 (S.D.N.Y.1992)). With respect to the second prong, plaintiffs only allege that representatives of BASF Magnetics met with representatives of SKM in furtherance of the price-fixing conspiracy. This is plainly insufficient to support an inference that BASF AG was a member of the conspiracy.

## 4. Successor Jurisdiction and BASF AG's Motion for Summary Judgement

Plaintiffs also argue that because "BASF AG now stands in the shoes of

[BASF GmbH] as a result of the merger that took place in June 1996, there is personal jurisdiction over BASF AG." (Pls. Opp'n at 15.) However, as the court in *Rutgerswerke AG v. Abex Corp.*, No. 93 Civ. 2914, 1995 WL 625701 (S.D.N.Y. Oct. 25, 1995) stated: "In *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court established that '[e]ach defendant's contacts with the forum State must be assessed individually.' This substantive jurisdictional principle requires that substantive legal precepts of successor liability should be disregarded in an assessment of personal jurisdiction." *Id.* at *3. Thus, Plaintiff's argument with respect to successor liability is inappropriate on a motion to dismiss for lack of jurisdiction.

In response to plaintiffs' argument, BASF AG has moved for summary judgment on the grounds that it was not a successor by merger to the magnetic audiotape business carried on by BASF GmbH. Because the Court has found that there is no basis for jurisdiction over BASF AG, its motion for summary judgment is denied as moot.[5]

## SKM Jurisdictional Analysis

 As set forth above, the Court finds that Section 12 of the Clayton Act provides for personal jurisdiction based on a minimum contacts analysis with the United States as a whole being the relevant forum. Therefore, the question is whether SKM has sufficient contacts with the United States that the exercise of personal jurisdiction by this Court satisfies due process.

## 1. General Jurisdiction

 Plaintiffs rely on the fact that SKM maintains an English language web-

---

**5.** Thus, Emtec Pro Media, Inc.'s motion for leave to file a brief as amicus curiae in opposition to BASF AG's motion for summary judgment is also denied as moot.

site, which includes a description of the SKM and its subsidiaries. (Kilsheimer Aff., Ex. 1.) However, when there is a non-interactive web site maintained on a server out of the country, as the Court assumes here without facts alleged to the contrary, the fact that Americans can access the website is insufficient to serve as a basis for personal jurisdiction. In *Drucker Cornell v. Assicurazioni Generali S.p.A. Consolidated,* No. 97 Civ. 2262, 2000 WL 284222, at \*2 (S.D.N.Y. Mar. 16, 2000), the court found that a website accessible from New York but neither created in New York nor maintained on a server located in New York could not support a finding that the defendant was doing business for the purposes of CPLR § 301. The court further found that "even if such an exercise of jurisdiction were proper under § 301, it would not be permissible under the Due Process Clause absent, at a minimum, an allegation that [defendant's] use of the web site was purposefully directed toward New York." *Id.* (citing *Bensusan Rest. Corp. v. King,* 937 F.Supp. 295, 301 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2d Cir.1997)). In the only case this Court could find where foreign defendants were held to have sufficient national contacts via their internet activities to be subject to personal jurisdiction in the United States, the court found purposeful availment by the defendants within the forum based on significantly more deliberate action than what is alleged here. *See Quokka Sports, Inc. v. Cup Int'l Ltd.,* 99 F.Supp.2d 1105, 1112 (N.D.Cal. 1999) (finding that interactive website selling services and products and supporting third-party advertising which required the defendants to enter into contracts with United States advertisers satisfied the purposeful availment prong of due process inquiry). This Court therefore finds no basis from which it can conclude that SKM's website can constitute a contact with the United States for the purposes of personal jurisdiction.

Plaintiffs next seek to rely on an advertisement placed in the January 1999 issue of Tape Disc Business magazine that has "SKM" in large bold letters at the bottom center and lists SKMA, SKM Europe and SKM and their respective addresses. (Kilsheimer Aff., Ex. 2.) SKM claims SKMA, not SKM, was the advertiser, relying on the magazine's advertiser directory which lists SKMA as the entity supporting the advertisement. (*Id.*, Ex. 2 at 192.) Which entity was the advertiser is irrelevant, however, because "mere advertising or marketing activities do not constitute an adequate basis for general jurisdiction absent a systematic and continuous course of doing business in the forum state." *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 662 (S.D.N.Y.1997) (applying CPLR 301).

Plaintiffs also assert that SKM does business in the United States. Plaintiffs' evidence to support their claim that "SKM (sometimes referred to as SKML) ships product directly to certain customers in the United States," (Pls. Opp'n at 9), consists of an undated draft business plan that states that "all packaging is done at SKML and is then shipped directly to the customer"; a 1994 SKMA Trip Report regarding a SKM shipment of audiotape to Symmetry Group, Inc., apparently located in the United States; and an undated business plan which includes a statement that SKM supplies 3M with audio cassettes. These isolated incidents of doing business in the United States taken individually or in the aggregate, do not support a finding of "continuous and systematic" contacts.

Therefore, the Court finds that the facts plaintiffs rely on to argue that SKM has sufficiently continuous and systematic contacts are insufficient to assert personal jurisdiction over SKM.

## 2. Subsidiary Contacts

### A. SKMA

As stated with respect to BASF AG, the relevant inquiry is whether there are any indications that the parent is in direct or indirect control of the subsidiary such that the subsidiary is a "mere department" or "agent" of the parent. A subsidiary will be found an agent of the parent corporation "when [the subsidiary] provides services beyond mere solicitation and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 121 (2d Cir. 1967). Plaintiffs must show that the subsidiary "acted . . . for the benefit of with the knowledge and consent of the non-resident [parent] and the non-resident must exercise some control over the agent." *H. Heller & Co. v. Novacor Chems. Ltd.*, 726 F.Supp. 49, 55 (S.D.N.Y. 1988) (quoting *Selman v. Harvard Med. Sch.*, 494 F.Supp. 603, 611 (S.D.N.Y.1980)). Plaintiffs rely on the SKM website's description of the two companies to characterize them as an "integrated whole," (Pls. Opp'n at 13), and SKMA as the "marketing arm" of SKM. (*Id.*) The description itself however, does nothing other than portray a parent-subsidiary relationship. Plaintiffs also rely on the fact that 95% of SKMA's sales and 98% of SKMA's gross profit in 1995 were came from the sale of SKM products. However, SKM does not receive any of the proceeds from these sales, (Yoo Decl. ¶ 8), and, as the *Heller* court noted, if the parent receives no profit from the subsidiary's sales, those sales cannot be a basis on which to find that the subsidiary is an agent of the parent. *See* 726 F.Supp. at 56. There are no other allega-

tions that would support a finding that SKMA is an agent of SKM.

To determine whether SKMA is a "mere department" of SKM, the Court considers four factors: (1) common ownership; (2) SKMA's financial dependency on SKM; (3) the degree to which SKM interferes in the selection and assignment of SKMA's executive personnel and fails to observe corporate formalities; (4) the degree of control over the marketing and operational policies of SKMA exercised by SKM. *See Jazini*, 148 F.3d at 185 (citing *Volkswagenwerk*, 751 F.2d at 120–22). Plaintiffs allege that SKMA is wholly owned by SKM, that SKM management visited the United States to discuss business with the management of SKMA and OCMP, that there was a common use of employees between the parent and subsidiary, that SKMA closely coordinates its financial reporting with SKM and that SKM guaranteed some of SKMA's loans from United States banks. (Pls. Opp'n at 9, 14–15.)

Regarding the common use of employees, plaintiffs do not allege and present no evidence of overlapping executives, only that some SKMA employees became SKM employees and vice versa. This is not a "common use of employees" that reduces the subsidiary to a mere department of the parent. *See Jazini*, 148 F.3d at 185. Regarding the financial control exerted by SKM over SKMA, plaintiffs cite to documents which reflect meetings, approximately thirty-three, in the United States between SKM and SKMA employees over a two year period and rely on a job description for SKMA's Chief Financial Officer which describes coordination with SKM regarding financial reporting and liaising with SKM. (Kilsheimer Aff., Exs. 9, 37.) The Court finds that this evidence is insufficient to establish the necessary degree of control by SKM over SKMA: "The officers of any corporation

that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of the supervision alone is not enough to subject the parent to jurisdiction." *Volkswagenwerk*, 751 F.2d at 120. Finally, the fact that SKM has guaranteed bank loans for SKMA does not rise to the level of financial dependency that would make SKMA a mere department of SKM. *See Ugalde v. Dyncorp, Inc.*, No. 98 Civ. 5459, 2000 WL 217502, at *3 (S.D.N.Y. 2000) (finding the parent's interest-free loans to the subsidiary and borrowing money on behalf of the subsidiaries to support a finding that the parent exerts significant financial control over the subsidiaries). Therefore, the Court declines to find that the contacts SKMA has with the United States can be imputed to SKM.

### B. OCMP

Plaintiffs also argue that the relationship between OCMP and SKM is such that OCMP is SKM's agent and its contacts with the United States should be imputed to SKM. However, OCMP is not a subsidiary of SKM or SKMA (neither party explains exactly what OCMP is) and it only has a relationship with SKMA, under an agreement to provide legal and other administrative services to SKMA. (Yoo Reply Decl. ¶ 9.) Thus, there is no basis for OCMP's United States activities to be imputed to SKM.

### 3. Specific Jurisdiction

#### A. Co-conspirator Contacts

Although plaintiffs state that SKM met with representatives of BASF Corp. in Dallas, Texas and with representatives of BASF GmbH in Seoul, Korea (Pls. Opp'n at 17), there is only evidence that SKMA employees attended those meetings. Therefore, for the same reasons the Court found BASF AG not subject to personal jurisdiction based on co-conspirator contacts, SKM is also not subject to personal jurisdiction.

### B. Effects Test

Plaintiffs argue that SKM is subject to personal jurisdiction because it and "its co-conspirators foresaw and intended that their price-fixing activity would have an effect .. throughout the United States." (Pls. Opp'n at 18.) Again, however, for the same reasons that plaintiffs' arguments failed with respect to BASF AG, because plaintiffs rely on evidence that only shows SKMA's attendance at meetings where prices were allegedly fixed, they cannot demonstrate that SKM was a direct participant in the conspiracy.

### Conclusion

BASF AG's motion to dismiss is granted, BASF AG's motion for summary judgment is denied as moot and SKM's motion to dismiss is granted. The complaint in 00 Civ.1982 is dismissed.

This Memorandum and Order has been filed under seal because the parties have submitted information subject to a confidentiality order. The parties are to advise the Court in writing, within five business days thereof, with specificity, whether anything herein should remain under seal because of the confidentiality order. If there is no such requirement, this Memorandum and Order will be unsealed.

SO ORDERED.